UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSE CARLOS ARCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-01777-WTL-MJD |
| | ) | |
| JENNIFER BARNES as a private individual, | ) | |
| CORIZON, LLC INDIANA DEPARTMENT | ) | |
| OF CORRECTIONS AS REAL PARTY IN | ) | |
| INTEREST, | ) | |
| MICHAEL MITCHEFF Doctor, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTIONS TO COMPEL**

This matter comes before the Court on Plaintiff's "Motion to Compel Answers to

Interrogatories Propounded to Defendants Jennifer Barnes and Corizon, LLC" [Dkt. 36];

Plaintiff's "Motion to Compel Production of Documents" [Dkt. 37]; Plaintiff's "Motion to

Compel Disclosure" [Dkt. 38]; and Plaintiff's "Motion to Compel Compliance." [Dkt. 57.] For

the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Docket Nos.

36, 37, and 38, and **DENIES AS MOOT** Docket No. 57.

## I.      Background

Jose Carlos Arce ("Plaintiff") was a prisoner at Indiana's Plainfield Correctional Facility.

[Dkt. 21 ¶ 1.] On April 28, 2014, he filed an amended complaint against Jennifer Barnes

("Barnes"), Brian Smith ("Smith"), and Corizon, LLC ("Corizon") (collectively "Defendants"),

alleging that they failed to adequately treat his back pain. [*See* Dkt. 21.]

Arce's back pain began with an on-the-job injury suffered in 2007. [*Id.* ¶ 16.] He received

treatment in the form of therapy, steroid injections, electrical stimulation, and anti-

inflammatory/pain medication, until 2009, when he was incarcerated. [*Id.* ¶¶ 18-20.] After his incarceration, his back pain was "tolerable and manageable," in part because the prison provided an orthopedic mattress to help alleviate his pain. [*Id.* ¶ 21.]

In April 2013, Arce temporarily left the Plainfield facility and left his mattress with a prison officer; when he returned, he alleges that the prison refused to return the mattress, causing his back pain to worsen. [*Id.* ¶ 23.] He claims that he complained of increased pain, but that medical personnel did not conduct a physical exam and ordered only anti-inflammatory medication that failed to provide relief. [*Id.* ¶ 25.] He specifically complains of an appointment with Defendant Barnes, in which he alleges that Barnes refused to conduct an exam or provide treatment for his pain. [*Id.* ¶ 26.] He also states that he wrote to Defendant Smith—superintendent of the Plainfield facility—to inform Smith of the alleged lack of treatment, but that Smith did not respond. [*Id.* ¶ 27.]

Arce's pain persisted until September 2013. [*Id.* ¶ 29.] At that time, he began a course of physical therapy that caused his pain to diminish "to the point of being tolerable and manageable again." [*Id.* ¶ 30.]

Two months later, in November 2013, Plaintiff filed this lawsuit. [*See* Dkt. 1.] He asserts two main claims: First, he brings a claim pursuant under 42 U.S.C. § 1983, and alleges that Defendants Barnes and Smith violated his Eighth Amendment rights because they "were deliberately indifferent" to the "objectively serious medical need" created by his back pain. [*Id.* ¶¶ 31-37.] Second, he brings a claim under Indiana state law, and alleges that Defendants' conduct constituted medical malpractice because they failed to meet "certain minimum standards of care" for his condition. [*Id.* ¶ 43.]

Discovery commenced, and on April 28, 2014, Plaintiff sent to Defendants' counsel a set of interrogatories, a set of requests for production of documents, and a request for "disclosures." [*See* Dkts. 36, 37, & 38.] He followed these with an amendment to each request on May 5, 2014. [Dkt. 39 at 2.] Defendants responded on June 4, 2014. [*Id.*] They included with their responses numerous objections, [*see, e.g.*, Dkt. 36 ¶ 5, Dkt. 38 ¶ 4], and Plaintiff filed the current motions to compel more extensive responses. [Dkts. 36, 37, & 38.] Three months later, Plaintiff filed an additional "Motion to Compel Compliance," [Dkt. 57], related to one of his requests for disclosures. The Court conducted a hearing on the motions on October 27, 2014.

## II.     Discussion

Parties may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevance is "construed broadly," *Med. Assur. Co. v. Weinberger*, 295 F.R.D. 176, 181 (N.D. Ind. 2013), and relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Rule 37(a) allows a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Courts have "broad discretion" in ruling on such motions and have "consistently adopted a liberal interpretation of the discovery rules" in order to "aid the search for truth." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). The scope of discovery, however, has limits, and a court may deny a motion to compel to "protect a party from oppression or undue burden," *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002), or when the motion seeks irrelevant information. *See, e.g.*, *Barker v. Life Ins. Co. of N. Am.*, 265 F.R.D. 389, 396 (S.D. Ind. 2009). With these principles in mind, the Court addresses each of Plaintiff's motions.

**A. Docket No. 36: "Motion to Compel Answers to Interrogatories Propounded to Defendants Jennifer Barnes and Corizon, LLC"**

Plaintiff's Amended Interrogatories contained sixteen questions. [*See* Dkt. 36 ¶ 2.] Defendants objected to numbers 6 through 9 and 11 through 16. [Dkt. 39 at 3-5.]

**1. Amended Interrogatories Nos. 6, 7, 8, and 9**

Amended Interrogatories Nos. 6 and 7 ask Defendants to state whether, and if so, how many times, Jennifer Barnes has been the defendant in any "legal action/lawsuit in relation to providing medical care." [Dkt. 39-1 at 7.] Nos. 8 and 9 ask for the same information with regard to "administrative complaint[s] in relation to providing medical care." [*Id.*]

Defendants objected to these interrogatories on the grounds that they were "overly broad and burdensome" and "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." [Dkt. 39-4 at 3-4.] In their response to Plaintiff's motions, Defendants "stand by their objections" and contend that information concerning "other proceedings that may have been filed against Defendant Barnes does not have any relevance" to whether Barnes was "deliberately indifferent" to Plaintiff's back pain. [Dkt. 39 at 3.]

Plaintiff argues that the information requested is relevant because a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessarily' to demonstrate deliberate indifference." [Dkt. 36 (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1354 (2011).] This contention is unavailing because the case law Plaintiff relies upon is inapposite: *Connick* refers to the pattern of conduct that may establish the deliberate indifference necessary to hold a municipality liable under 42 U.S.C. § 1983 for a failure to train its employees. *See* 131 S. Ct. at 1360. This sort of deliberate indifference is distinct from the sort of deliberate indifference Plaintiff must show to prevail on his Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (noting that the "deliberate indifference" standard for municipal liability is "not

an appropriate test for determining the liability of prison officials under the Eighth Amendment"). Thus, although *Connick* supports discovery of information related to a pattern of misconduct in failure to train claims brought against municipalities, it does not support such discovery with respect to Plaintiff's individual Eighth Amendment claim.

At the hearing, Plaintiff also argued that Amended Interrogatories Nos. 6 through 9 are relevant to the "subject matter" of the litigation, such that they fall within the scope of Fed. R. Civ. P. 26. [Motion to Compel Hearing, October 27, 2014, at 9:16.] The scope of discovery, however, extends to "any nonprivileged matter that is relevant to *any party's claim or defense*." Fed. R. Civ. P. 26(b)(1).[1] As previously noted, a pattern of misconduct is not relevant to Plaintiff's Eighth Amendment claims against Barnes, and Plaintiff could not articulate at the hearing how the information in interrogatories Nos. 6 through 9 was relevant to his medical malpractice claim. [Hr'g at 9:20.] The Court also notes that the requested information sweeps in all lawsuits and administrative proceedings—not merely those in which Barnes was found negligent or otherwise liable. [*See* Dkt. 39-4 at 2-3.] This reduces the likelihood that the requested information could establish that Barnes' conduct fell below the applicable standard of care, and thus makes it unlikely that the information is relevant to Plaintiff's asserted claim of medical negligence.

The Court therefore concludes that the information in Amended Interrogatories Nos. 6-9 is not relevant to a claim or defense of either party. As such, it falls outside scope of discovery, *see* Fed. R. Civ. P. 26(b)(1), and the Court accordingly **SUSTAINS** Defendants' relevance objection.

---

[1] Rule 26 also provides that for "good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Plaintiff, however, has not argued that such "good cause" exists in this case. [*See* Dkt. 36.]

### 2. Amended Interrogatory No. 11

Amended Interrogatory No. 11 asks Defendant Corizon to describe its "contractual obligations" to the Indiana Department of Correction ("IDOC") "in relation to providing medical care to inmates of Plainfield Correctional Facility." [Dkt. 39-4 at 4.]

Defendants objected to this interrogatory as "irrelevant, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." [*Id.*] They also note in their response that the contract between Corizon and the IDOC is a matter of public record that "speaks for itself." [Dkt. 39 at 4.]

At the hearing, Plaintiff argued that the contractual relationship between Corizon and the IDOC could be relevant to a claim or defense because Corizon might assert that its contractual obligations limit the amount of care provided to inmates. [Hr'g at 9:22.] Plaintiff conceded, however, that Defendants have not actually made such an assertion, [*id.*], undercutting his argument that the contractual relationship is related to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). For this reason, the Court **SUSTAINS** Defendants' relevance objection.

### 3. Amended Interrogatory No. 12

Amended Interrogatory No. 12 asks for the names, titles, and addresses of persons employed by the IDOC to oversee and enforce its contract with Corizon "in relation to providing medical care to inmates of Plainfield Correctional Facility." [Dkt. 39-4 at 4.] Plaintiff asserts this information is relevant because it would help him establish who was responsible for ensuring that he received adequate medical care and could indicate that such a "person would be liable for deliberate indifference." [Dkt. 36 ¶ 11.] Defendants, however, objected on the grounds that the interrogatory was "irrelevant, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." [Dkt. 39-4 at 4] They contend that Plaintiff is

merely conducting a "fishing expedition in attempt to locate unknown defendants." [Dkt. 39 at 4.]

At the hearing, Plaintiff explained that this interrogatory was related to Brian Smith's liability as superintendent of the Plainfield facility. [Hr'g at 9:24.] The Court, however, has dismissed the claims against Brian Smith, [*see* Dkt. 46], and so discovery related to Smith is no longer relevant to "any party's claim or defense." Fed R. Civ. P. 26(b)(1). The Court therefore **SUSTAINS** Defendants' relevance objection.

### 4. Amended Interrogatories Nos. 13 and 14

Amended Interrogatories Nos. 13 and 14 ask whether, and if so, how many, lawsuits Corizon has defended against "in relation to providing medical care." [Dkt. 39-4 at 5.] Defendants objected to these interrogatories "as "overly broad and unduly burdensome," and contended that the information called for was "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence" because it did not relate to "the medical care Plaintiff received in this case." [*Id.*]

At the hearing, Plaintiff argued and Defendants agreed that a pattern of misconduct on Corizon's part could establish the sort of "policy" or "practice" necessary to render Corizon liable for any violation of Plaintiff's Eighth Amendment rights that may have occurred.[2] [Hr'g at 9:24-25; *see also Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (recognizing liability based on "a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners").] This, in turn, could

---

[2] Plaintiff's Amended Complaint does not appear to assert a § 1983 municipal liability claim against Corizon. [*See* Dkt. 21 ¶¶ 31-43.] Even if Plaintiff had asserted such a claim, however, the Court would sustain Defendants' over-breadth objection for the reasons described below.

make past lawsuits against Corizon relevant. *See Woodward*, 368 F.3d at 927 (noting that a "series of bad acts" can help establish corporate liability under § 1983).

The Court, however, agrees with Defendants that Plaintiff's interrogatories are nonetheless overbroad. The interrogatories have no temporal or geographic restrictions and are not limited to situations in which Corizon was found to have acted culpably. [*See* Dkt. 39-4.] They are also not limited to medical conditions similar to Plaintiff's, [*see id.*], and thus encompass any number of lawsuits that have no bearing whatsoever on whether Corizon maintains a "policy" or "practice" that infringes on Plaintiff's own rights.

Plaintiff, meanwhile, conceded at the hearing that that his interrogatories were overly broad, [Hr'g at 9:26-27], and argued in his motion only that the requested information is relevant to the "subject matter of the litigation." [Dkt. 36 at 4-5.] As noted above, this is the incorrect standard by which to determine the scope of discovery, such that Plaintiff's argument is unavailing. The Court therefore **SUSTAINS** Defendants' over-breadth objection.

### 5. Amended Interrogatories Nos. 15 and 16

Amended Interrogatories Nos. 15 and 16 ask Defendants to describe Corizons's guidelines for treating and addressing "pre-existing and degenerative medical conditions" and "complaints of physical pain." [Dkt. 39-4 at 5-6.] Defendants objected to this interrogatory as "vague, overly broad and irrelevant," and maintained that any standards that did exist "[did] not require a specific action by the medical providers in this lawsuit." [*Id.* at 5.]

Defendants further explained that they considered the term "physical pain" vague and did not know which of various guidelines used by their employees might relate to such symptoms. [Hr'g at 9:28-29.] They also contended that the term "degenerative medical conditions" was

overly broad because it could include numerous conditions unrelated to Plaintiff's complaints of back pain. [Hr'g at 9:30.]

The Court agrees that these terms are potentially vague and overly broad, but the Court also acknowledges that Defendants' internal guidelines could be relevant to Plaintiff's claims. To prove his medical malpractice claim, for instance, Plaintiff must prove, *inter alia*, that Corizon's medical staff failed to "exercise the degree of skill which other physicians possess and exercise in the same fields or specialties and in the same or similar locality." *Watson v. Med. Emergency Servs., Corp.*, 532 N.E.2d 1191, 1193 (Ind. Ct. App. 1989). Corizon's own guidelines for treatment in its facility could be relevant to the "degree of skill" its employees are expected to exercise, making such guidelines relevant to Plaintiff's claims and therefore discoverable. *See* Fed. R. Civ. P. 26(b)(1).

The Court thus **OVERRULES** Defendants' objections. To accommodate the vagueness and over-breath concerns, however, and in accordance with the limitations to which the parties agreed at the hearing, [Hr'g at 9:31-32], the Court will modify Amended Interrogatories Nos. 15 and 16 to read as follows:

> 15. Describe any guidelines that Corizon has promulgated and that Corizon used during any time between December 2009 and September 2013 at the Plainfield Correctional Facility for the treatment of pre-existing back conditions or degenerative back conditions.

> 16. Describe any guidelines that Corizon has promulgated and that Corizon used during any time between December 2009 and September 2013 at the Plainfield Correctional Facility to address and/or treat inmates' complaints of back pain.

Defendants are directed to respond to modified interrogatories 15 and 16 as set out above within twenty-eight (28) days of the date of this order.

**B. Docket No. 37: "Motion to Compel Production of Documents"**

Plaintiff's Amended Requests for production ask for seven sets of documents. [*See* Dkt. 39-5.] His motion targets Defendants' responses to Amended Requests Nos. 1 through 4. [*See* Dkt. 37.]

In his first and third requests, Plaintiff seeks "[a]ny and all medical records/documents" created or received by the Defendants "in providing medical care to Arce since December 10, 2009" (request one), and "in providing medical care to Arce—from April 15, 2013 through April 15, 2014—in relation to his complaints of back pain" (request three). [Dkt. 39-5 at 1-2.] In his second and fourth requests, Plaintiff seeks any "memoranda, investigative files, or other documents created/received by the Defendants" in "providing medical care to Arce since December 10, 2009" (request two), and "in providing medical care to Arce—from April 15, 2013 through April 15, 2014—in relation to his complaints of back pain" (request four). [Dkt. 39-5 at 2.]

Defendants provided responsive documents for the period "relating to the dates alleged in Plaintiff's complaint," presumably April 2013 until September 2013. [*Id.*] Defendants objected to the remainder of the requests as being "overly broad and burdensome in that Plaintiff is requesting medical records for a time period in excess of the time period covered in the allegations of his complaint." [*Id.*]

At the hearing, Defendants agreed to collect and provide additional records responsive to Amended Request No. 1, even if those records fell outside the April 2013 to September 2013 period. [Hr'g at 9:35.] The parties also agreed that the documents described in Requests Nos. 2, 3, and 4 fell within the scope of the medical records Defendants agreed to produce in response to Amended Request No. 1. [Hr'g at 9:37-39.] The Court accordingly orders that Defendants'

objection to Amended Request No. 1 is **WITHDRAWN**, and orders Defendants to fully respond to Amended Request No. 1 within twenty-eight (28) days of the date of this order. The Court, however, will **SUSTAIN** the objections to Amended Requests Nos. 2, 3, and 4 on the grounds that Defendants need not re-produce information that has been or will be provided in response to Request No. 1.

### C. Docket No. 38: "Motion to Compel Disclosure"

On May 5, 2014, Plaintiff sent to Defendants an amended "Request for Disclosures." [*See* Dkt. 39-6.] Plaintiff's first four requests ask for the names of witnesses Defendants intend to call at trial; a description of such witnesses' testimony; "all information" Defendants intend to use at trial; and the identification of any expert witnesses to be used at trial. [*Id.* at 2-3.]

Defendants objected to each of these requests on the grounds that they were "premature" under Fed. R. Civ. P. 26. [*Id.* 2-4.] They noted that they intended to move for summary judgment and would provide the requested disclosures only if their motion were denied and the case proceeded to trial. [*Id.*]

The fact that a party intends to move for summary judgment generally is no basis on which to preclude discovery. *See* Fed. R. Civ. P. 26(d); Fed. R. Civ. P. 56(d). The Court's scheduling order in this matter, however, provides specific times for the disclosure of the information Plaintiff seeks in Request Nos. 1 through 4. [*See* Dkt. 47 ¶ B (disclosure of witnesses and expected testimony); *id.* ¶ C (disclosure of information and documents); *id.* ¶ G (disclosure of experts).] The Court therefore **SUSTAINS** Defendants' objection with respect to these requests, but does so without prejudice to Plaintiff's right to compel production of such information if Defendants do not comply with the Court's scheduling order.

The remaining requests ask for identification of the prison officials who evaluated Plaintiff's requests for care. [*Id.* at 3.] Request No. 5 seeks "the name and title of the person whose writing and signature appears on Plaintiff's Exhibit T, Request for Interview." [*Id.*] Request No. 7 seeks the "name and title of the person whose writing appears on Plaintiff's Exhibit N, Request for Health Care." [*Id.*]

Defendants explained at the hearing that they had already provided the information Plaintiff seeks in Requests No. 5 and 7. [Hr'g at 9:45.] Plaintiff maintained that he had not received any such information, [Hr'g at 9:45-46], but Defendants agreed to re-send the information. [*Id.*] The Court accordingly orders the objections to requests five and seven **WITHDRAWN**. If Defendants have not yet re-sent the information, then they are ordered to do so within twenty-eight (28) days of the date of this order.

Plaintiff's remaining request—Request No. 6—seeks the name and title of "the person(s) who according to Plaintiff's Exhibit T . . . disapproved Arce's request for a medical mattress." [*Id.*] In his motion to compel disclosure, [Dkt. 38], Plaintiff argues that the identification of this person is relevant to his claims because the person may have exhibited deliberate indifference to Plaintiff's back pain by denying his request. [*Id.* ¶ 12.]

After Plaintiff filed his motion but before the hearing on the motions to compel, the Court addressed the identification of this unknown medical official in its Minute Entry for September 23, 2014. [Dkt. 55.] The Court reported in that entry that it had conducted a status conference and that Defendants had agreed "to provide Mr. Arce with an amended response" to Plaintiff's Request No. 6 on or before October 3, 2014. [*Id.*]

On September 29, 2014, Defendants sent Plaintiff an amended response in which they identified Health Services Administrator Tracy Proffit as the person who signed the form

disapproving Plaintiff's request. [Dkt. 57 at 1.] On October 9, Plaintiff filed his "Motion to Compel Compliance," [Dkt. 57], in which he argues that Defendants' amended response did not properly identify the official who denied his request for the mattress because Proffit only signed the form disapproving his request—she did not necessarily make the underlying decision to disapprove the request. [*Id.* at 2.]

In response to Plaintiff's motion, Defendants served a "second supplement" to their response to Request No. 6. [Dkt. 62 at 3.] This second supplement identified one of Corizon's regional medical coordinators and explained that this official and Plaintiff's treating physician were both involved in the decision not to approve a medical mattress for Plaintiff. [Dkt. 62-1 at 2] At the hearing, the parties further discussed the roles of these individuals in deciding that Plaintiff did not require a medical mattress. [Hr'g at 9:52-54.] Based on these events, the Court finds that Plaintiff has received the information he seeks in Request No. 6. The Court therefore orders that Defendants' objections are **WITHDRAWN** and **DENIES AS MOOT** Plaintiff's Motion to Compel Compliance. [Dkt. 57.]

### III. Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's "Motion to Compel Answers to Interrogatories Propounded to Defendants Jennifer Barnes and Corizon, LLC" [Dkt. 36]; Plaintiff's "Motion to Compel Production of Documents" [Dkt. 37]; and Plaintiff's "Motion to Compel Disclosure." [Dkt. 38]. Defendants are ordered to respond to Plaintiff's discovery requests as set forth above within twenty-eight (28) days of the date of this order. Finally, the Court **DENIES AS MOOT** Plaintiff's "Motion to Compel Compliance." [Dkt. 57.]

Date: 12/11/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

13

Distribution:

JOSE CARLOS ARCE
Delfin Madrigal No 95
Edif. B-3 Apt 102
Col. Santo Domingo, Coyoacan
Mexico City, Mexico,  D.F.C.P. 04369

Jeb Adam Crandall
 BLEEKEDILLONCRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL, P.C
jeb@bleekedilloncrandall.com

Daniel  Gore
INDIANA ATTORNEY GENERAL
Daniel.Gore@atg.in.gov

Laura Lee Bowker
INDIANA ATTORNEY GENERAL
laurabowker@hotmail.com