UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSE CARLOS ARCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:13-cv-01777-WTL-MJD |
| | ) |
| JENNIFER BARNES, et al., | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment
and Directing Entry of Final Judgment**

**I. Background**

Plaintiff Jose Carlos Arce, who was at all times relevant to this case an inmate at Plainfield Correctional Facility ("Plainfield") but is no longer incarcerated, brings this civil rights action pursuant to 42 U.S.C. § 1983 and state law. The defendants are Nurse Jennifer Barnes, a nurse practitioner at Plainfield, Dr. Michael Mitcheff, and their employer Corizon, LLC ("Corizon"). Mr. Arce alleges that the defendants failed to adequately treat his severe back pain that was caused by an injury that occurred prior to his incarceration. He brings the following claims: (1) an Eighth Amendment medical claim; (2) a First Amendment retaliation claim; and (3) a state law negligence claim. For the reasons explained in this Entry, the defendants are entitled to summary judgment on all of Mr. Arce's claims.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. Undisputed Facts

In August 2007 Mr. Arce sustained work-related injuries to his back. A year later, he was diagnosed with, among other things, degenerative disc disease. This back condition causes Mr. Arce chronic back pain.

While incarcerated, Mr. Arce was seen by multiple health care providers for complaints of knee pain, back pain, high cholesterol, high blood pressure, a cornea transplant and other health issues. Mr. Arce's medical records reflect that on June 22, 2010, while he was being examined for issues relating to a cornea transplant, he complained of arthritic problems, including back problems. A lumbosacral spine x-ray was ordered by his medical provider. A radiology report dated June 25, 2010, reflected a normal lumbar spine and normal sacrum and coccyx.

Mr. Arce was transferred to Plainfield in May 2011. Upon his arrival, Plainfield medical personnel provided him with an orthopedic mattress to alleviate pain caused by his back condition.

Mr. Arce's medical records reflect that in December 2011, he complained of generalized pain in his back and knees that he claimed resulted from standing for up to six hours during his work in the prison laundry. He sought pain medication or a back or knee brace. The record of the nurse visit scheduled in response to Mr. Arce's complaints reflect that Mr. Arce refused treatment for his complaints of back and knee pain stating that, in his opinion, the option of being evaluated by a nurse and receiving Tylenol or ibuprofen to address his complaints of pain would not treat his problem. Mr. Arce states that he refused treatment because he was no longer working in the prison laundry room, and thus no longer experienced pain.

There are no indications in the medical records of Mr. Arce complaining of back pain from December 2011 until April 15, 2013. Mr. Arce's complaints began again when he was returned to Plainfield after a court appearance and informed that the orthopedic mattress was no longer available. On April 15, 2013, he complained that removal of a "special mattress" from his cell caused his back pain to worsen and requested the return of the mattress. Plainfield healthcare staff scheduled him for a medical sick call. On April 29, 2013, Mr. Arce sent another healthcare request, stating that his chronic back pain was worsening and that he wanted his special mattress back.

The next day, on April 30, 2013, Mr. Arce was seen in the clinic by Rebecca Trivett, L.P.N. in response to a health care request form he submitted in which he complained that a "special mattress" was taken from him on April 11, 2013. Mr. Arce reported that the removal of the "special mattress" resulted in a recurrence of back pain from an injury he had suffered several years earlier when he was thrown from a forklift. Nurse Trivett informed Mr. Arce that if his back pain does not subside or becomes more severe to seek further care.

On May 5, 2013, Mr. Arce filed a third request for healthcare. He stated that his chronic back pain continues to bother him, but that all he needs is his special mattress returned. Shortly thereafter, healthcare staff looked into whether a special mattress was available. It was not. On May 20, 2013, Mr. Arce was denied his request for the special mattress, and was instead scheduled for another appointment the following day for pain management.

On May 21, 2013, Nurse Practitioner Loice Mukona saw Mr. Arce for a provider visit related to Mr. Arce's complaints of back pain. The visit notes reflect that Mr. Arce walked into the examining room with no limping or any signs of pain. Mr. Arce requested a "medical mattress" that he stated was prescribed by a nurse in 2011. Nurse Mukona found no documentation in Mr. Arce's medical records of any prescription for a medical mattress. Mr. Arce also requested strong pain medications. Nurse Mukona prescribed anti-inflammatory medications and back exercises to address Mr. Arce's complaints of back pain. At that time, Mr. Arce's medications were aspirin, Lisinopril for high blood pressure, Lopid and Pravachol for high cholesterol, and Naproxen (an anti-inflammatory) for pain relief.

On May 31, 2013, Mr. Arce submitted a fourth request for healthcare. He acknowledged that Nurse Mukona gave him medications for his back pain, but stated that his back pain has remained the same and that he wishes to start the next level of treatment. The next day, Plainfield healthcare staff responded that they are unable to give him Vicodin and that he should file another healthcare request form if he still wishes to be seen.

On June 3, 2013, Mr. Arce was seen by Dr. Jacques LeClerc in response to Mr. Arce's request for a special medical mattress. Dr. LeClerc submitted an order for a "thick medical mattress for back pain." When medical staff at an IDOC facility has a question concerning a physician's order, medical staff may refer the order to the Health Services Administrator ("HSA") for the

facility for further action or investigation. Because there was no prior medical history of an orthopedic or medical mattress being prescribed for Mr. Arce, and it would have been a custody issue to introduce a "special thick mattress" into an inmate's cell, Dr. LeClerc's order was referred to the HSA at Plainfield, Tracy Profitt, for review.

On June 4, 2013, Mr. Arce submitted another healthcare request form requesting to be seen for his chronic back pain. Another medical appointment was scheduled for Mr. Arce.

On June 7, 2013, an administrative note was entered by Ms. Profitt, stating she met with Mr. Arce regarding Dr. LeClerc's order requesting a thick medical mattress for treatment of Mr. Arce's back pain. The administrative note states that "No documentation was found onsite or offsite in regards to a medical necessity for a firm mattress due to back pain." Ms. Profitt further noted that she had spoken with Dr. Mitcheff, the Regional Medical Director, regarding Dr. LeClerc's order for a "thick medical mattress." After reviewing Mr. Arce's medical record, Dr. Mitcheff agreed that there was no medical indication for prescribing a special mattress to address Mr. Arce's complaints of back pain. Therefore, Mr. Arce was not provided a medical mattress.

On June 13, 2013, Nurse Barnes saw Mr. Arce in the clinic as follow up for his continued reports of back pain. Mr. Arce reported to Nurse Barnes that Naproxen was not alleviating his back pain and he felt he should have the "next level" of treatment. Nurse Barnes noted that Mr. Arce walked with no impairment or limp, moved all extremities without issue, and stood and sat unassisted with no issue. Mr. Arce stated that he had injured his back approximately six years prior to incarceration and demanded that his MRI from 2008 be reviewed. He was informed that the 2008 MRI had been reviewed and that a new formulary medication would be tried to treat his complaints of lower back pain as he stated Naproxen was not effective. A prescription for Mobic, another anti-inflammatory drug, was entered on that date in an attempt to address Mr. Arce's

5

continued complaints of pain.[1] Nurse Barnes recommended to Mr. Arce that the prescribed medications be given a chance to work before trying alternative treatments.

On July 19, 2013, Mr. Arce submitted another request for healthcare, stating that the medication prescribed had not alleviated his back pain and that he has not received physical therapy or the orthopedic mattress he requested. On August 14, 2013, Nurse Barnes requested that Mr. Arce be evaluated for physical therapy and be provided four physical therapy visits to address his back pain. Dr. Mitcheff approved the request for physical therapy and Mr. Arce was scheduled for a series of four physical therapy visits beginning in August 2013. Mr. Arce did not show up for his first two physical therapy sessions, on August 21 and 31, 2013. On September 4, 2013, Mr. Arce was evaluated for low back pain by physical therapist, Dana Miller. Mr. Arce reported he had fallen off a fork lift in 2007 and was diagnosed at that time with bulging/herniated disks with an anular tear. He reported being treated with steroid injections and physical therapy at the time of the accident which Mr. Arce reported was helpful, but he stated he still had recurrent pain. Mr. Arce reported not taking prescribed anti-inflammatory medications as he stated they did not help his pain. Mr. Arce was observed by the physical therapist to be walking normally with no limp and in no acute distress. His deep tendon reflexes were normal. The physical therapist recommended a home exercise program with trunk and leg extension stretches along with gentle core strengthening.

---

[1] Mr. Arce asserts that it was Nurse Mukona, not Nurse Barnes, who prescribed him Mobic. He points the Court to his May 31, 2013, request for healthcare in support of this fact. In that request for healthcare, Mr. Arce states that Nurse Mukona prescribed him medication on May 20, 2013. This does not place in dispute defendants' evidence—consisting of Nurse Barnes' sworn declaration and Mr. Arce's medical records—which show that Nurse Barnes informed Mr. Arce during his June 13, 2013 visit that "another formulary medication can be tried and will be ordered today" and that a prescription for Mobic was entered on that date. Furthermore, the medical records reflect that Mr. Arce was not prescribed Mobic during his May 21, 2013 visit with Nurse Mukona. Accordingly, Mr. Arce's assertion that who prescribed him Mobic is disputed is unavailing.

Mr. Arce saw Ms. Miller for his second physical therapy appointment on September 18, 2013. He reported that he was completing the recommended exercises each day, and that the prone trunk extension exercise relived his pain "pretty well." He reported some improvement. Mr. Arce's third physical therapy appointment occurred on September 25, 2013. He reported improvement with less pain and better flexibility.

On October 2, 2013, Mr. Arce was seen by Ms. Miller for his fourth and final physical therapy visit. He reported being able to manage his pain and radicular symptoms by doing his home therapy exercises. Ms. Miller reported that Mr. Arce continued to inquire about getting a better mattress. Ms. Miller stated that Mr. Arce showed significant improvement in that he reported decreased pain and some increased flexibility. She reported further that Mr. Arce was independent and compliant with his exercises and could continue on his own. No further physical therapy sessions were requested or approved.

On January 18, 2014, a non-state issued pillow and other property were confiscated from Mr. Arce's cell. On February 16 and February 28, 2014, Mr. Arce submitted two requests for healthcare, asking that his unauthorized pillow be returned since it relieves "some of [his] back pain," but he did not request any further medical attention or physical therapy. On February 18, 2014, Mr. Arce was seen by Rachel Houghton, R.N. in response to his complaint that the unauthorized pillow in Mr. Arce's cell had been confiscated. Mr. Arce stated that the pillow was necessary to alleviate back pain and that his request for return of the pillow was "related to a lawsuit." The written response to Mr. Arce's request for healthcare asking for return of his pillow stated that no medical necessity had been demonstrated for an extra pillow.

On April 11, 2014, Mr. Arce was seen by Toni Jordan, LPN in response to his healthcare request stating that he continued to suffer from back pain related to removal of his extra pillow.

Ms. Jordan referred Mr. Arce to a medical provider as Mr. Arce reported that his condition was not responding to protocol. On April 17, 2014, Mr. Arce was seen by Nurse Mukona who reported that Mr. Arce presented with reports of back pain and continued to request an extra pillow for relief from his pain. Per Mr. Arce's request, Nurse Mukona entered an order for an extra pillow.

### B. Analysis

#### 1. *Eighth Amendment Medical Care Claim*

Mr. Arce asserts Eighth Amendment medical care claims against Nurse Barnes and Dr. Mitcheff. At all times relevant to Mr. Arce's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

For purposes of summary judgment, the parties do not dispute that Mr. Arce's back condition constitutes a serious medical condition. Instead, they disagree as to whether Nurse

Barnes and Dr. Mitcheff were deliberately indifferent to Mr. Arce's back problems and pain. Specifically, Mr. Arce contends that Dr. Mitcheff's decision to overrule Dr. LeClerc's recommendation that Mr. Arce receive an orthopedic mattress and Nurse Barnes's delay in treating his back pain evinced deliberate indifference to his back condition. The Court will therefore focus on the deliberate indifference element of Mr. Arce's claims.

        a.      Dr. Mitcheff

The Court addresses first Mr. Arce's claim that Dr. Mitcheff was deliberately indifferent to his back condition when he overruled Dr. LeClerc's recommendation that Mr. Arce receive a special medical mattress.[2] Mr. Arce argues that the mattress recommended by Dr. LeClerc for Mr. Arce's back pain was a medical necessity and thus it evinces deliberate indifference for Dr. Mitcheff to have denied him this mattress. But the evidence shows that Dr. Mitcheff simply disagreed with Dr. LeClerc that the mattress was medically necessary. The "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Moreover, an inmate "is not entitled to demand specific care," nor is he "entitled to the best care." *Forbes v. Edgar*, 112 F.3d 262, 267

---

[2] The defendants rely on Nurse Barnes's declaration to support some of their assertions regarding the denial of Mr. Arce's mattress request. Mr. Arce contends that Nurse Barnes's declaration is inadmissible because she lacks personal knowledge as to some of the events about which she attests. Nurse Barnes is, however, able to testify as to the contents of Mr. Arce's medical records and grievances, which her declaration establishes fall under the business records exception to hearsay, *see* Fed. R. Evid. 803(6), and this hearsay exception "clearly does not require that the witness have personal knowledge of the entries in the records," *United States v. Christ*, 513 F.3d 762, 770 (7th Cir. 2008). As set forth in Nurse Barnes's declaration, her attestations are based either on her personal knowledge or her review of Mr. Arce's medical records and grievances. Accordingly, Ms. Barnes' declaration is admissible to the extent she is making statements concerning matters about which she has personal knowledge or are based on her review of the relevant records.

9

(7th Cir. 1997). Thus, even though Mr. Arce preferred the medical mattress as the means to treat his back pain, and even though Dr. LeClerc recommended it, given Dr. Mitcheff's disagreement with that medical recommendation and the absence of evidence that "no minimally competent professional would have [recommended the same] under those circumstances," *Pyles*, 771 F.3d at 409, its denial does not amount to deliberate indifference.

Because the undisputed evidence shows that Mr. Arce cannot establish that Dr. Mitcheff was deliberately indifferent to his back condition, Dr. Mitcheff is entitled to summary judgment on Mr. Arce's Eighth Amendment claim.

### b. Nurse Barnes

Mr. Arce argues that Nurse Barnes evinced deliberate indifference to his back condition and the pain it was causing him when she delayed providing him adequate treatment. Nurse Barnes was involved in Mr. Arce's care as follows: after several complaints of back pain and examinations by other prison medical staff, Nurse Barnes saw Mr. Arce on June 13, 2013, after he asserted that the earlier treatment he received was ineffective and his back pain remained. Mr. Arce informed Nurse Barnes that the Naproxen he was previously given was not alleviating his back pain, so Nurse Barnes prescribed him a different medication, Mobic. Nurse Barnes recommended to Mr. Arce that the prescribed medications be given a chance to work before trying alternative treatments. Mr. Arce requested further treatment on July 19, 2013, asserting that his back pain continued. In response, on August 14, 2013, Nurse Barnes recommended that Mr. Arce be evaluated for physical therapy. Dr. Mitcheff approved this recommendation. Mr. Arce attended four physical therapy sessions, and on multiple occasions reported that the exercises were improving his condition and alleviated some of his pain.

Mr. Arce argues that there was a delay in treating his back pain, which is sufficient to show deliberate indifference. He asserts that he received no treatment from May 20, 2013 until August 21, 2013, when he was given physical therapy. But as Mr. Arce implicitly recognizes by stating that he did not receive any "effective" treatment during that time, Nurse Barnes treated Mr. Arce on June 13, 2013, and changed his medication regimen. Mr. Arce next complained of back pain on July 19 of that year, and Nurse Barnes recommended physical therapy for him on August 13, which commenced on August 21. Therefore, any delay in Mr. Arce's treatment attributable to Nurse Barnes was, at most, the two-month period from when she changed his medication regimen (June 13) to when he began physical therapy (August 21).

Mr. Arce is correct that a delay in treatment can, in some instances, establish deliberate indifference. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

As to the seriousness of the condition, Mr. Arce's degenerative disc disease undoubtedly caused him some pain, but the evidence does not show that it was severe. During his May 21, 2013, visit with Nurse Mukona, Mr. Arce exhibited no signs of pain and was not limping. On June 13, 2013, Nurse Barnes reported that Mr. Arce walked with no impairment or limp, moved all extremities without issue, and stood and sat unassisted with no issue. She switched his medication in an attempt to alleviate his pain. Nurse Barnes stated that Mr. Arce did not exhibit any signs of physical limitations, his physical examinations revealed full range of motion, he walked with no impairment or limp, he moved all extremities without issue and stood/sat unassisted with no issue, and overall, he never exhibited any signs of an emergent condition. The record thus establishes

that, while Mr. Arce undoubtedly experienced back pain, it did not appear to Nurse Barnes or any other Plainfield medical personnel that the pain significantly impacted his ability to move in a normal fashion, nor did his chronic back pain appear so painful that he required immediate or emergency care.

Given the foregoing, the defendants argue that summary judgment is warranted for several reasons. First, they contend that the purported delay in treatment was not a delay at all. The Court agrees. The undisputed evidence shows that Nurse Barnes's medical judgment was that the new anti-inflammatory medication, Mobic, should be given a period of time to work before alternative treatments were explored. Given that Nurse Barnes believed that Mr. Arce's back pain was not severe or an emergency, she could not have been deliberately indifferent to his back pain by implementing a medically appropriate time period to allow Mr. Arce's condition before turning to physical therapy. Whether this course of action met the standard of care is undisputed; defendants present evidence that it did (Ms. Barnes attests as much), and Mr. Arce's expert, as discussed below, does not dispute this. And if Nurse Barnes met the standard of care—that is, she was not even negligent in pursuing this course of treatment—this alone demonstrates that Nurse Barnes was not deliberately indifferent to Mr. Arce's back condition. *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) ("Negligence—even gross negligence—is insufficient to [show deliberate indifference]."); *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) ("[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'").

Alternatively, to the extent the time period between the newly administered medication and physical therapy is considered a "delay" in treatment, no reasonable jury could find that the two-month delay in recommending physical therapy was due to Nurse Barnes's deliberate indifference. *See Haley v. Feinerman*, 168 Fed. Appx. 113, 117 (7th Cir. 2006) (holding a doctor's four-month delay in surgery that caused the surgery to be more difficult did not evince deliberate indifference because further medical examinations were being conducted during that time and the undisputed evidence showed that the doctor was simply "exercise[ing] his medical judgment" and thus not "fail[ing] to respond to an obvious injury"). The contrary is true, as Nurse Barnes's medical judgment was that the anti-inflammatory medications should be given time to improve Mr. Arce's back pain before another course of treatment was used. This exercise in medical judgment cannot establish that Nurse Barnes was deliberately indifferent to Mr. Arce's back condition. *See Plummer v. Wexford Health Sources, Inc.*, --- Fed. Appx. ----, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment," *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006), but there is no such evidence here.

Mr. Arce resists this conclusion by relying on his expert report, which he contends shows that Nurse Barnes was deliberately indifferent to his back pain.[3] The expert report was provided

---

[3] Mr. Arce's expert report was originally submitted unsworn. In the Court's Entry dated April 22, 2015, the Court granted Mr. Arce's motion to submit a sworn version of his expert report and stated that the Court would consider this expert report in ruling on the defendants' motion for summary judgment. The Court also noted in that Entry that Mr. Arce makes an unspecified request for additional discovery regarding Dr. Mitcheff in his summary judgment briefing. The Court

13

by Dr. Antonio Hernandez Fernandez, an orthopedic surgeon. Mr. Fernandez began treating Mr. Arce in November 2014, well after the events involved in this litigation occurred. Mr. Fernandez does not state that he reviewed any of the evidence relating to Mr. Arce's medical treatment while he was incarcerated at Plainfield or that he has knowledge of the events underlying this action.

Mr. Arce relies on Dr. Fernandez's general statement that "to delay treatment while [a] patient complains of pain would not be consistent with accepted professional practice or standards within the field of orthopedics and traumatology." Filing. No. 91 at 2. While this is likely true as a general matter, it does not bear on this case, let alone place Nurse Barnes's evidence that she followed the standard of care in treating Mr. Arce's back pain in dispute. As detailed above, Mr. Arce received treatment for his back condition, and when he complained that the treatments were ineffective, Nurse Barnes continued to try new courses of treatment—namely, she first switched Mr. Arce to a different medication, and second, when that proved ineffective, she recommended (and Dr. Mitcheff approved) physical therapy, which ultimately improved Mr. Arce's back pain. Furthermore, Ms. Barnes explained to Mr. Arce that the new medication should be given a chance to work before trying alternative treatments. After several weeks passed and Mr. Arce was still experiencing back pain, Nurse Barnes changed course and recommended physical therapy. Simply put, Dr. Fernandez's generalized statement is unrelated to the facts of this case and does not specifically address whether Nurse Barnes's treatment decisions met the standard of care; therefore, it cannot place her evidence to the contrary in dispute. Notably, Mr. Arce's expert recommended treating Mr. Arce's back pain with, among other things, anti-inflammatory medication (Naproxen) and physical therapy, which is the very course of treatment Nurse Barnes

---

denied Mr. Arce's request because it was not properly made, nor did it comply with the requirements for additional discovery pursuant to Federal Rule of Civil Procedure 56(d).

14

and other Plainfield medical personal chose to follow. This further undermines any argument that a reasonable jury could conclude that Nurse Barnes's treatment decisions were "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396. For these reasons, Mr. Arce's expert fails to under the defendants' evidence that Nurse Barnes provided Mr. Arce with appropriate medical care.

Because the undisputed evidence shows that Mr. Arce cannot establish that Nurse Barnes was deliberately indifferent to his back condition, she is entitled to summary judgment on his Eighth Amendment claim against her.

2.  *Retaliation Claim*

Mr. Arce brings a First Amendment retaliation claim against unnamed Plainfield medical personnel. He asserts that his extra pillow was confiscated and he was denied further physical therapy in retaliation for filing the instant action.

To prevail on his First Amendment retaliation claim, the plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation and quotation marks omitted). As with any constitutional claim brought via § 1983, individual liability requires "personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (citation and quotation marks omitted).

The defendants argue that they are entitled to summary judgment on Mr. Arce's retaliation claim because he fails to demonstrate that either Nurse Barnes or Dr. Mitcheff were personally involved in the confiscation of his pillow or the denial of further physical therapy; he instead

15

asserts that unspecified "Plainfield medical personnel" were responsible for these actions. The Court agrees that there is no evidence that Nurse Barnes or Dr. Mitcheff were personally involved in the retaliatory conduct of which Mr. Arce complains. He indeed asserts only that "Plainfield medical personnel" were responsible for the confiscation of his pillow and the denial of additional physical therapy. The documents to which Mr. Arce points the Court reflect that other Plainfield personnel—not Nurse Barnes or Dr. Mitcheff—were responsible for both the confiscation of his pillow and the denial of further physical therapy. Nurse Barnes and Dr. Mitcheff cannot be held liable for retaliation without personal involvement in the alleged retaliatory conduct. *See Minix*, 597 F.3d at 833; *see also De Jesus v. Odom*, 578 Fed. Appx. 598, 601 (7th Cir. 2014) (granting summary judgment to the defendant on the plaintiff's retaliation claim because the plaintiff failed to adduce evidence that the defendant was personally involved in the alleged retaliatory conduct). Accordingly, they are entitled to summary judgment on Mr. Arce's retaliation claim.

### 3.   *State Law Negligence Claims*

Mr. Arce asserts medical negligence claims under Indiana law against Nurse Barnes, Dr. Mitcheff, and their employer Corizon. Before addressing these claims on the merits, the Court must determine whether it is appropriate to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

The Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that

sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

The third exception to the general rule is present in this case, since it is clear that Mr. Arce failed to present his claims to the medical review panel before bringing this action as required by Indiana law. Indiana Code § 34-18-8-4 provides in relevant part that "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel."

Mr. Arce does not dispute that he failed to present his negligence claims to the medical review board as required by Indiana Code § 34-18-8-4. Instead, he argues that the statute does not govern claims under federal law. But Mr. Arce's medical negligence claim is necessarily brought pursuant to state law, as medical negligence is insufficient to state a § 1983 Eighth Amendment claim. *See King*, 680 F.3d at 1018. Indeed, Mr. Arce himself uses the label "state law negligence claims" in his response brief. Filing No. 84 at 11.

Mr. Arce also appears to argue that because this claim is brought is federal court, the state law medical review panel requirement does not apply. However, § 34-18-8-4 "governs *claims* under Indiana law (thus including diversity suits)," not only cases brought in state court. *Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001) (emphasis added). Therefore, his arguments regarding the applicability of § 34-18-8-4 are unavailing.

Because Mr. Arce did not comply with § 34-18-8-4, the defendants are entitled to summary judgment on Mr. Arce's negligence claims. *See Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371,

17

374 (7th Cir. 2010) (medical malpractice panel must issue an opinion on medical malpractice claims before they may be pursued in court); *Johnson v. Raham*, 2014 WL 555252, *12 (S.D. Ind. 2014) (granting summary judgment on medical negligence claim because the plaintiff failed to comply with Indiana Code § 34-18-8-4). These claims are dismissed without prejudice for lack of jurisdiction.

## IV. Conclusion

For the reasons stated above, the defendants' motion for summary judgment [dkt 80] is **granted**. Final judgment consistent with this Entry shall issue.

Date: 7/29/15

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

JOSE CARLOS ARCE
Delfin Madrigal No 95
Edif. B-3 Apt 102
Col. Santo Domingo, Coyoacan
Mexico City, Mexico D.F.C.P. 04369
Mexico

Electronically Registered Counsel